RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0383P (6th Cir.)
File Name: 02a0383p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

DAVID GARY GAWTHROP,
    *Defendant-Appellant.*

No. 01-1462

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-80075—Robert H. Cleland, District Judge.

Argued: August 14, 2002

Decided and Filed: November 4, 2002

Before: MOORE and COLE, Circuit Judges; MARBLEY,
District Judge.[*]

———————————

## COUNSEL

**ARGUED:** James R. Gerometta, FEDERAL PUBLIC
DEFENDERS OFFICE, Detroit, Michigan, for Appellant.
Kathleen Moro Nesi, ASSISTANT UNITED STATES

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for
the Southern District of Ohio, sitting by designation.

ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** James R. Gerometta, Richard J. O'Neill, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

———————

## OPINION

———————

ALGENON L. MARBLEY, District Judge. Defendant-Appellant, David Gary Gawthrop ("Gawthrop"), appeals his sentence received for conviction on one count of receiving child pornography over the Internet in violation of 18 U.S.C. § 2252(a)(2). Gawthrop assigns error to the district court's imposition of a five-level enhancement, pursuant to U.S.S.G. § 2G2.2(b)(4), for engaging in a pattern of activity involving the sexual abuse of a minor, and to the court's application of a two-level enhancement, pursuant to U.S.S.G. § 3A1.1, based upon a vulnerable victim. This Court's appellate jurisdiction is proper under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. For the following reasons, this Court **AFFIRMS** Defendant-Appellant's sentence.

## I. BACKGROUND

This case arose from Defendant-Appellant's arrest and conviction on state charges for sexually abusing his granddaughter. From January 1999 through April 1999, Gawthrop knowingly possessed 54 visual depictions of minors engaged in sexual activity. Sometime between January 1999 and March 1999, he molested his three-year-old granddaughter, who was visiting his residence. During that incident, Gawthrop was viewing child pornography on his home computer in his bedroom, when his granddaughter entered the room and saw the illicit images. At that point, Gawthrop pulled out his penis and had her touch it. He then had the child perform oral sex, assuring her that it was alright because that was what the children in the pictures were doing.

SENTENCING GUIDELINES APPENDIX C, AMEND. 537 (1996) (emphasis added).

The fact that Gawthrop's 1988 conviction could not be considered as part of his criminal history under § 4A1.2 is of no consequence. Nothing in § 2G2.2(b)(4) or its current commentary requires a temporal nexus between any instances of sexual abuse or exploitation. In the matter *sub judice*, Gawthrop has displayed a repugnant proclivity for abusing females in his family. Such abuse of his daughter and granddaughter — even though the events occurred eleven years apart — clearly constitutes a "pattern of activity involving the sexual abuse or exploitation of a minor" sufficient to justify the district court's adjustment of his offense level.

This Court, therefore, **AFFIRMS** the five-level enhancement pursuant to § 2G2.2(b)(4).

## V. CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant-Appellant's sentence.

We find that the district court did not err in applying the § 2G2.2(b)(4) enhancement. Gawthrop does not contest the court's factual findings that he had sexually abused both his daughter and granddaughter.[4]   The only question, then, is whether the eleven-year span between these two events precludes each from being considered as a part of a pattern of such activity.

In arguing that there is an insufficient connection between his acts of sexual abuse, Gawthrop relies on *United States v. Surratt*, 87 F.3d 814, 819 (6th Cir. 1996), but misinterprets its holding as it relates to the 1996 guideline amendment. The defendant in that case was convicted of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2), and the government requested a § 2G2.2(b)(4) increase based upon defendant's sexual abuse of his daughter. The *Surratt* court, in rejecting the government's request, relied upon the former commentary to § 2G2.2(b)(4) and stated:

> Here, as the district court found, Surratt's alleged sexual abuse of minors in the past was not at all related to the offense of which he was charged, the receipt of sexually explicit depictions of minors on March 10, 1992. The defendant's sexual abuse of his daughter, for example, occurred at least three years prior to the postal inspector's "sting" operation that resulted in Surratt's arrest.

*Id.* at 818.  Read in context, the *Surratt* court rejected the enhancement because the defendant's sexual abuse of his daughter did not relate to the offense of conviction, not simply because the abuse occurred three years prior to his § 2252(a)(2) offense. In no way does *Surratt* require temporal proximity between two different events of sexual abuse or exploitation. The 1996 guideline amendment clarified "that the 'pattern of activity' may include acts of sexual abuse or exploitation *that were not committed during the course of the offense or that did not result in a conviction.*"   U.S.

---

[4]Gawthrop misstates the eleven-year period of time between these two events as twelve years.

Gawthrop told his granddaughter not to tell anyone about the incident.

On July 21, 1999, Gawthrop's son went to the Livonia, Michigan Police Department with his daughter and informed the police that she had told him that her grandfather made her put his penis in her mouth. After the child was interviewed by a detective the next day and related the same incident, Gawthrop was arrested. On August 11, 1999, his computer was seized and examined by the Wayne County Sheriff's Office. As various files depicted children under the age of 18 engaged in sexually explicit activity with adults, the matter was referred to the FBI on September 16, 1999. On October 12, 1999, Gawthrop was convicted of criminal sexual conduct in Michigan state court for molesting his granddaughter, sentenced to 81 months to 20 years in prison, and given psychological counseling.  He is currently serving his sentence and will be eligible for parole on July 11, 2006.

On October 13, 2000, an Information was filed in the Eastern District of Michigan charging Gawthrop with knowingly receiving child pornography over the Internet during July 1999, in violation of 18 U.S.C. § 2522(a)(2). On December 5, 2000, he waived indictment and pled guilty to the Information. The Plea Agreement, written pursuant to Rule 11 of the Federal Rules of Criminal Procedure, included a total offense level of 18 and a criminal history category of II, with a guideline range of 30 to 37 months in prison. The parties agreed that any sentence imposed would not exceed 33 months.

Prior to sentencing, the United States Probation Department issued a Presentence Report ("PSR") on February 6, 2001. In the PSR, the Probation Officer calculated Gawthrop's base offense level to be 17 and subject to the following adjustments: (1) a two-level increase, pursuant to U.S.S.G. § 2G2.2(b)(1), as the pornographic material contained prepubescent minors under the age of 12; (2) a two-level increase, pursuant to § 2G2.2 (b)(5), as the offense involved the use of a computer; (3) a five-level increase, pursuant to

§ 2G2.2(b)(4), based upon a pattern of activity involving sexual abuse of minors;[1] and (4) a three-level decrease, pursuant to § 3E1.1, for acceptance of responsibility. The PSR noted that the district court might also wish to consider a two-level enhancement under § 3A1.1 for vulnerable victim, or an upward departure because Gawthrop had abused a position of trust due to his familial relationship with his granddaughter. Gawthrop was assigned a criminal history category of II, based in part upon his state conviction for molesting his granddaughter. Thus, the PSR concluded that the resulting guideline range was between 51 and 63 months.

Among other objections to the PSR, Gawthrop objected to the suggestion of a two-level increase under § 3A1.1, claiming that his granddaughter was not the victim of the offense of receiving child pornography. He also argued that the five-level enhancement under § 2G2.2(b)(4) was "inapplicable to traffickers in child pornography who are not directly involved in the actual physical abuse or exploitation of minors." Although the Probation Officer rejected both of these objections, Gawthrop restated his position in his sentencing memorandum, and added two additional arguments in support of his positions. With respect to the § 3A1.1(b)(1) enhancement, he claimed that the guideline had already considered his granddaughter's age, and noted his punishment for this conduct through his state conviction and sentence of 81 months to 20 years imprisonment. He also claimed that the § 2G2.2(b)(4) enhancement was inapplicable, because the two instances of sexual abuse occurred more than twelve years apart and did not constitute a pattern.

After conducting a two-day sentencing hearing, the district court rejected Gawthrop's objections, and added a two-level increase under § 3A1.1(b)(1) and a five-level enhancement under § 2G2.2(b)(4), for a total offense level of 25 and a criminal history category of II. The court determined that

---

[1]Gawthrop also pled guilty to criminal sexual conduct in 1988 for molesting his daughter, and was sentenced to five years of probation.

U.S. SENTENCING GUIDELINES MANUAL § 2G2.2, cmt. n.1.[3] Furthermore, "[p]rior convictions taken into account under subsection (b)(4) are also counted for purposes of determining criminal history points pursuant to Chapter Four, Part A (Criminal History)." *Id.* at cmt. n.2.

Defendant-Appellant argues that the district court erred in applying the five-level enhancement because his 1988 conviction for sexually abusing his daughter was too attenuated from the 1999 sexual abuse of his granddaughter to form a "pattern of activity" under § 2G2.2(b)(4). Gawthrop concedes that the 1996 guideline amendment removed the requirement that past conduct must relate to the instant offense to be considered under § 2G2.2(b)(4). He claims, however, that there must still be a sufficient temporal nexus between instances of abuse or exploitation to establish a pattern of such activity. In this case, Gawthrop notes that his 1988 conviction occurred too long ago even to be considered as part of his criminal history calculation. He asserts that because the abuse of his daughter occurred more than twelve years prior to the abuse of his granddaughter, these two events do not constitute a pattern of activity.

The Government argues that the court did not err in applying the § 2G2.2(b)(4) enhancement, because Gawthrop's abuse of his daughter and granddaughter illustrates a pattern of such activity. The Government rejects Gawthrop's contention that there must be a temporal nexus between such isolated events, and asserts that this enhancement can be applied to "decades-old" conduct.

---

[3]This commentary was the result of a 1996 amendment that deleted the previous definition:

"Pattern of activity involving the sexual abuse or exploitation of a minor," for the purposes of subsection (b)(4), means any combination of two or more separate instances of the sexual abuse or the sexual exploitation of a minor, whether involving the same or different victims.

U.S. SENTENCING GUIDELINES APPENDIX C, AMEND. 537 (1996).

vulnerability of the victim. Clearly she was a victim of relevant conduct within the scope of the offense at large.

In *United States v. Niece*, 9 F.3d 110 (Table), 1993 WL 424960 at *9 (6th Cir. 1993), this Court upheld a § 3A1.1 enhancement based upon the defendant's "father figure" relationship to the victim. Even worse than the defendant in *Niece* who engaged in consensual sex with a teenage girl, Gawthrop molested and exposed his three-year-old granddaughter to child pornography by abusing his special position as her grandfather. A grandfather-granddaughter relationship certainly falls within the range of relationships upon which a finding of victim vulnerability can be predicated. The district court did not clearly err in finding that this familial relationship rendered Gawthrop's granddaughter particularly vulnerable to his misconduct.

Thus, this Court **AFFIRMS** the two-level enhancement pursuant to § 3A1.1(b)(1).

### IV. THE U.S.S.G. § 2G2.2(b)(4) ENHANCEMENT

Section 2G2.2(b)(4) of the United States Sentencing Guidelines provides: "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase [the base offense level] by 5 levels." U.S. Sentencing Guidelines § 2G2.2(b)(4). Under this guideline:

"Pattern of activity involving the sexual abuse or exploitation of a minor" means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same or different victims; or (C) resulted in a conviction for such conduct.

§ 3A1.1(b)(1) applied because Gawthrop's abuse of his granddaughter and his exposing her to the pornography qualified as relevant conduct to his offense of receiving child pornography, and because she was particularly vulnerable based upon her familial relationship with Gawthrop. Likewise, the court found that § 2G2.2(b)(4) was appropriate because any two instances of sexual abuse constituted a pattern of such activity. The resulting guideline range was 63 to 78 months, and the court accepted the Rule 11 cap, imposing a sentence in the midpoint of the range at 70 months. Since the conduct underlying Gawthrop's state conviction accounted for a portion of his federal sentence, the court ordered that 15 months be served concurrent with his state sentence, and that the remaining 55 months be served consecutively. The court also provided that if Gawthrop served more than the minimum on his state sentence, he could petition the court to have the consecutive portion of his federal sentence commence forthwith. The district court entered judgment on March 22, 2001, and Defendant-Appellant filed a timely notice of appeal on March 26, 2001.

### II. STANDARDS OF REVIEW

Defendant-Appellant challenges the district court's factual findings as to whether his granddaughter was a vulnerable victim in this matter. With regard to a § 3A1.1(b) enhancement, this Court reviews a district court's factual findings for clear error. *United States v. Curly*, 167 F.3d 316, 318 (6th Cir. 1999). While giving due deference to the district court's application of the sentencing guidelines to those facts, the court's legal conclusions are reviewed *de novo*. *Id.* Defendant-Appellant does not contest the district court's factual findings regarding his convictions for sexually abusing his daughter in 1988 and his granddaughter in 1999. Rather, Gawthrop challenges the court's application of § 2G2.2(b)(4) to these facts. This Court reviews *de novo* the district court's construction of § 2G2.2(b)(4). *United States v. Surratt*, 87 F.3d 814, 817-18 (6th Cir. 1996).

### III. THE U.S.S.G. § 3A1.1(b)(1) ENHANCEMENT

Section 3A1.1(b)(1) of the United States Sentencing Guidelines provides: "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase [the base offense level] by 2 levels."    U.S. SENTENCING GUIDELINES § 3A1.1(b)(1).    Under § 3A1.1(b)(1):

"vulnerable victim" means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct. Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. The adjustment would apply, for example, in a fraud case in which the defendant marketed an ineffective cancer cure or in a robbery in which the defendant selected a handicapped victim. But it would not apply in a case in which the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank. Do not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age.

U.S. SENTENCING GUIDELINES MANUAL § 3A1.1(b)(1), cmt. n.2. Relevant conduct is defined as:

all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation

Additionally, the increasing use of computers to transmit child pornography substantially increases the likelihood that this material will be viewed by, and thus harm, children. . . . In light of these significant harms, it is essential that those who are caught and convicted for this conduct be punished severely.

*Id.* (quoting H.R. Rep. No. 104-90, *reprinted in* 2 U.S.C.C.A.N. 104th Cong., 1st Sess., pp. 760-61 (1995)). Although distributing child pornography to minors often facilitates their sexual abuse, as was true in this case, the harm resulting from viewing such material is separate and distinct from the harm caused by molestation. Gawthrop's criminal history calculation did not account for the harm that his granddaughter suffered from being forced to view the perverted images on his computer. Indeed, even if he had not also molested her, she no doubt would have endured psychological trauma caused by her exposure to the child pornography alone. Thus, the relevant conduct of Gawthrop's exposing his granddaughter to child pornography satisfies the first prong of the § 3A1.1 vulnerable victim definition.

The district court also found that the granddaughter was unusually vulnerable, not because of her age since that factor had already been considered by the guidelines, but because of her familial relationship:

And it's the relationship, it's the blood relationship that the Probation Department focuses upon, or the familio [sic] relationship, at least, the grandfather/granddaughter tie that's been identified by the Probation Department.
* * *
That is the extra element of vulnerability unrelated to age that supports in the Probation Department's view the enhancement.    And it's not double counting, because that relationship, that familio [sic] relationship is was not accounted for elsewhere in the guidelines.
* * *
The familio [sic] relationship does support the extra element required in the guideline definition for

feigning, that is ultimately consistent in the main with what the granddaughter said in the first place.

Based upon the record, the district court's factual findings on this point are not clearly erroneous. Gawthrop's exposing his granddaughter to child pornography constituted relevant conduct to his offense of conviction. Moreover, the district court did not clearly err in finding that Gawthrop's sexual abuse of his granddaughter was relevant conduct to his federal offense.

The district court, in applying § 3A1.1(b)(1), would have erred had it only relied upon the sexual abuse as relevant conduct. Gawthrop's prior state conviction for this sexual abuse could not have been considered in calculating both his criminal history and his offense level. Doing so would have resulted in impermissible double counting. *See, e.g., United States v. Torres,* 182 F.3d 1156, 1160 (10th Cir. 1999) ("If the district court did take the prior sentence into account in calculating the offense level, then it is clear that to prevent double counting the court cannot use that same sentence in its criminal history calculation."). Yet, the record clearly indicates that the court also considered as relevant conduct the fact that he exposed his granddaughter to child pornography, a fact sufficient, in and of itself, to warrant the § 3A1.1(b)(1) enhancement.

The Government is correct in arguing that Gawthrop essentially distributed child pornography to an unwitting three-year-old victim. As this Court has noted, "[i]n the 'Sex Crimes Against Children Prevention Act of 1995,' Congress directed the United States Sentencing Commission to increase the Guidelines for sex crimes committed against children, specifically, for offenses committed under 18 U.S.C. §§ 2251 and 2252." *United States v. Brown*, 237 F.3d 625, 628 (6th Cir. 2001). The legislative history of that Act demonstrates that exposure to child pornography, along with other dangers, concerned Congress enough to strengthen these statutes:

for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S. SENTENCING GUIDELINES § 1B1.3(a)(1)(A).

Gawthrop argues that the district court erred in applying the vulnerable victim enhancement because of the abuse of his granddaughter. He contends that in the context of a violation of 18 U.S.C. § 2252(a)(2) the victim is the subject portrayed by the pornography. Gawthrop claims that his granddaughter is a victim only of the criminal sexual conduct for which he was already convicted and sentenced under state law, and notes that his conviction was included in the criminal history computation for this case. He asserts that the court erroneously characterized conduct from his state conviction as relevant conduct when determining his sentence for the instant offense. Gawthrop maintains that, in effect, the district court double counted his criminal sexual conduct, both as part of his criminal history and as relevant conduct to his receipt of child pornography.

The Government argues that the district court did not clearly err in finding that Gawthrop's granddaughter was a vulnerable victim, based upon the relevant conduct of exposing her to child pornography and her familial relationship with Gawthrop. According to the Government, Gawthrop's relevant conduct of showing his granddaughter child pornography caused harm that was not accounted for in his criminal history, in that exposure to such material is a separate and distinct harm from that suffered through sexual abuse. The Government asserts that the court, in determining relevant conduct, did not rely solely on the granddaughter's sexual abuse as relevant conduct, but also contemplated that Gawthrop showed her child pornography. Accordingly, the Government contends that the court had alternate grounds for applying the § 3A1.1(b)(1) enhancement for vulnerable victim, and did so properly in this case.

As a threshold matter, we find that Gawthrop made sufficient objections to the district court's application of the § 3A1.1(b)(1) enhancement to preserve the issue for our

consideration.[2]    Although he obviously caused his granddaughter to suffer greatly, Gawthrop is correct in asserting that she was not a victim of his receipt of child pornography under 18 U.S.C. § 2252(a)(2).    In cases involving § 2252(a)(2) convictions, the victim has been identified as society, or as the child portrayed in the material that is the subject of the § 2252 conviction.  *See, e.g., United States v. Hibbler*, 159 F.3d 233, 237 (6th Cir. 1998) ("Only in those instances where there is no identifiable victim should a court deem the primary victim to be society. . . . When it adopted 18 U.S.C. § 2252, Congress clearly considered the children depicted in such materials to be the primary victims."); *United States v. Surratt*, 87 F.3d 814, 820 (6th Cir. 1996) ("[T]he subjects of the pornographic material were the 'victims' in this case . . . ."); *United States v. Ketcham*, 80 F.3d 789, 793 (3rd Cir. 1996) ("[T]he primary victims that Congress had in mind when it enacted 18 U.S.C. § 2252(a) were the children depicted in pornographic materials."); *United States v. Rugh*, 968 F.2d 750, 756 (8th Cir. 1992) ("[T]he primary victim under 18 U.S.C. § 2252(a)(2) is the exploited child."); *United States v. Toler*, 901 F.2d 399, 403 (4th Cir. 1990) ( "[T]he primary victim under section 2252(a) is society in general, with the minor a secondary victim."); *United States v. Smith*, 795 F.2d 841, 847 (9th Cir. 1986) (stating in dicta that the victims of the production of a child pornography film were the children portrayed therein).

The district court, however, found that Gawthrop's granddaughter was a victim not of the offense of conviction, but of two types of relevant conduct.  First, she was a victim of Gawthrop's sexual abuse.  The court stated, "I think it's

---

[2]The Government asserts that at sentencing Gawthrop never objected based upon double counting, and therefore forfeited this argument for purposes of appeal.  Although counsel for Gawthrop did not specifically cite relevant case law on this point, he objected to the imposition of § 3A1.1(b)(1) based upon the notion that considering Gawthrop's prior sentence to calculate both his criminal history and offense level was improper double counting. *See United States v. Miller*, 161 F.3d 977, 984 (6th Cir. 1998) (since counsel objected to any enhancement under § 2J1.3, the issue was preserved for appeal).

clear, and I think it's acknowledged that the sexual abuse of the granddaughter is relevant conduct to the offense of conviction." Second, the court determined that Gawthrop had exposed her to child pornography.  At the time of sentencing, there was some dispute as to whether Gawthrop invited his granddaughter into his bedroom and intentionally showed her the computer images, or whether the child wandered in on her own and inadvertently viewed the pictures.  After reviewing the evidence of record, and specifically an interview with the child, the court stated:

> . . . the defendant did, in fact, show her or do some, engage in behavior that's equivalent to showing her or displaying to her, or providing her access, open access to this pornographic material which I think then simply supports the concept that she was an identifiable victim of the behavior.
> * * *
> Well, my determination on that point is that there is a factual indication here, factual support that is reliable in its form and substance that indicates that the defendant did, in fact, proves, at least by the level that's required for these disputed sentencing issues that the defendant did engage in activities that are equivalent to showing the granddaughter the pornographic material.  He, in his statement, really did not even dispute in any significant way these facts.  And is, I think very equivocal about his memory or behavior or any willingness to acknowledge what happened.  It does say at one point that he claims he tried to clear the picture before she could see it.  I did not know if he was able to do so.  I, you know, I think from within his own statement, coming on the heels of several denials and claims of blackout and drunkenness, not knowing what happened or just, he said at one point, I'll say that I did it, but I'm not sure that I did.  His statement is not reliable.    Internally, it bears no indicia of reliability.  In fact, it bares [sic] several indicators of non-reliability, feigning a lack of knowledge and only bit by bit coming up with additional information that is